**SHEET METAL CONTRACTORS ASSO-CIATION OF NORTHERN NEW JER-SEY; Sheet Metal Workers' Local Union No. 25, Plaintiffs–Appellees,**

v.

**SHEET METAL WORKERS' INTERNA-TIONAL ASSOCIATION; and Sheet Metal Workers' Local Union No. 22, De-fendants–Appellants.**

**Docket No. 97–9609.**

United States Court of Appeals,
Second Circuit.

Argued June 10, 1998.

Decided Sept. 2, 1998.

David H. Thompson, (Charles J. Cooper, Cooper, Carvin & Rosenthal, PLLC, Washington, DC, Audrey A. Browne, New York City; Kathryn A. Sure, Wylie, McBride, Grossinger, Sure & Platten, San Jose, CA; Norman W. Albert, Goodman & Albert, LLC, Cranford, NJ, on the brief), for Defendants–Appellants.

David G. Uffelman, Pinto, Rodgers & Uffelman, Morristown, NJ, for Plaintiff-Appellee Sheet Metal Contractors Association of Northern New Jersey.

Paul K. Rooney, (Dana B. Zimmerman, Paul K. Rooney, P.C., New York City; Francis H. Pykon, Newark, NJ, on the brief), for Plaintiffs–Appellees Local Union No. 25 and Joint Apprenticeship Committee of Northern New Jersey.

John F. Suhre, C. Gregory Stewart, General Counsel, Philip B. Sklover, Associate General Counsel, Vincent J. Blackwood, Assistant General Counsel, Washington, DC, Equal Employment Opportunity Commission, for Amicus Curiae Equal Employment Opportunity Commission.

Before: WINTER, Chief Judge, WALKER, and CALABRESI, Circuit Judges.

JOHN M. WALKER, Jr., Circuit Judge.

Defendants-appellants Sheet Metal Workers' International Association ("the International") and Sheet Metal Workers' Local Union No. 22 ("Local 22") appeal from the December 11, 1997 decision of the United States District Court for the Southern District of New York (Robert L. Carter, *District Judge* ), pursuant to the All Writs Act, 28 U.S.C. § 1651(a), enjoining defendants from implementing an agreement reaffiliating Local 22 with the International.

We hold that, under the particular circumstances of this case, the district court's injunction was neither necessary nor appropriate to ensure Sheet Metal Workers' Local Union No. 25's ("Local 25") compliance with various court orders instituted to remedy unlawful discrimination by Local 25's predecessor-in-interest. Accordingly, we reverse the judgment of the district court and vacate the injunction.

*Background*

The International is an association of local unions that represents sheet metal workers. In 1971, the United States filed suit against one of the International's local unions, Local 28, based in New York City.[1] After a bench trial, the district court held that Local 28 had engaged in racial discrimination against African Americans and Hispanics in all aspects of its membership, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* *See EEOC 1*, 401 F.Supp. at

---

1. A detailed history of the litigation arising out of this suit, (hereinafter, the *"EEOC* litigation"), is set forth in *EEOC v. Local 638*, 81 F.3d 1162, 1168–71 (2d Cir.) (*"EEOC 8 "*), *cert. denied*, —— U.S. ——, 117 S.Ct. 333, 136 L.Ed.2d 246 (1996). We set forth only those facts relevant to the instant action. The cases that relate to the *EEOC* litigation are as follows: *EEOC v. Local 638*, 401 F.Supp. 467 (S.D.N.Y.1975) (*"EEOC 1 "*) (Local 28 liable for race discrimination); *EEOC v. Local 638*, 421 F.Supp. 603 (S.D.N.Y. 1975) (*"EEOC 2 "*) (adopting a remedial Affirmative Action Program and Order, or "AAPO"), *modified and aff'd, EEOC v. Local 638*, 532 F.2d 821 (2d Cir.1976) (*"EEOC 3 "*) (affirming liability determination and modifying and affirming the

AAPO); *EEOC v. Local 638*, 565 F.2d 31 (2d Cir.1977) (*"EEOC 4 "*) (affirming Revised Affirmative Action Plan and Order adopted by district court on remand); *EEOC v. Local 638*, 753 F.2d 1172 (2d Cir.1985) (*"EEOC 5 "*) (affirming contempt order against Local 28 and substantially affirming district court's Amended Affirmative Action Plan and Order ("AAAPO")), *aff'd, Local 28 v. EEOC*, 478 U.S. 421, 106 S.Ct. 3019, 92 L.Ed.2d 344 (1986) (*"EEOC 6 "*); *EEOC v. Local 638*, 889 F.Supp. 642 (S.D.N.Y.1995) (*"EEOC 7 "*) (holding Local 28 in contempt of previous orders and imposing further relief), *aff'd in part, rev'd in part, EEOC 8*, (affirming contempt findings, affirming in part and reversing in part district court's orders of relief).

487–88. By an order and judgment ("O & J") dated August 28, 1975 and still in effect today, the district court permanently enjoined

> Local 28 of the Sheet Metal Workers['] International Association, its officers, agents, employees and successors and all persons in active concert or participation with them in the administration of the affairs of Local 28 ... from engaging in any act or practice which has the purpose or the effect of discriminating in recruitment, selection, training, [or] admission to membership in Local 28 [or its] Apprentice Program ... on the basis of race, color or national origin.

*EEOC v. Local 638,* No. 71 Civ. 2877, slip op. at 2 (S.D.N.Y. Aug. 28, 1975). The court also directed Local 28 to achieve 29% minority membership by July 1981 and appointed Special Master David Raff to oversee Local 28's affirmative action program. *Id.* at 6–7.

Prior to 1981, defendant-appellant Local 22 was a member of the International, with exclusive jurisdiction over Sussex, Somerset, Union, and Morris counties in northern New Jersey. In 1981, as a result of its opposition to a plan by the International to merge Local 22 with Local 28 (which would have thereby subjected Local 22 to the court-ordered affirmative action plan that covered Local 28), Local 22 disaffiliated from the International and became an independent union. Local 22 has since operated in Staten Island and throughout New Jersey competing for sheet metal contracts. For its part, the International merged Union and Morris counties into Local 28 and merged Somerset and Sussex counties into other locals. Unlike Local 28, there has never been a finding by any court that Local 22 engaged in unlawful discrimination.

In 1981, "pursuant to directive of [the] General President of the [International]," Local 28 expanded its jurisdiction to include former Locals 10, 13, 55, and 559 in New Jersey. *EEOC v. Local 638,* No. 71 Civ. 2877, slip op. at 1 (May 17, 1983). The district court then approved an Amended Affirmative Action Program and Order ("AAAPO") establishing a goal of 29.23% minority representation in the expanded Local 28. *See EEOC v. Local 638,* No. 71 Civ. 2877, slip op. at 2 (S.D.N.Y. Sept. 19, 1983).

In 1990, the International created plaintiff-appellee Local 25. As successor-in-interest to Local 28, Local 25 was subject to the O & J and the AAAPO. The International vested Local 25 with jurisdiction over eight counties in northern New Jersey: Somerset and Sussex counties, and six counties formerly under Local 28, including Union and Morris counties. Thus, Local 25's territory includes the four counties (Somerset, Sussex, Union and Morris) over which Local 22 had exclusive jurisdiction prior to Local 22's disaffiliation from the International.

In 1993, Arthur Moore, who had been Local 28's business manager since 1977, became the International's General President. Since that time, the International and Local 22 have attempted to reaffiliate. Through reaffiliation, Local 22 seeks the opportunity, unavailable to it as an independent, to bid for contracts with employers who employ only AFL–CIO union workers. For its part, the International seeks reaffiliation, *inter alia,* to prevent Local 22 from affiliating with a competing international association. In 1995, the EEOC moved to block the reaffiliation on the basis that such reaffiliation would undermine Local 25's compliance with the O & J and AAAPO. In an order entered by Special Master Raff on November 22, 1995, the defendants agreed not to "implement any reaffiliation agreement until further order of the Court." *EEOC v. Local 638,* No. 71 Civ. 2877, slip op. at 1 (S.D.N.Y. Nov. 22, 1995).

Notwithstanding the Special Master's order, defendants agreed to reaffiliate on August 15, 1997 ("Original Agreement"), without giving notice to the district court. This Original Agreement "awarded" Union, Morris, Somerset and Sussex Counties back to Local 22, but permitted Local 25 to maintain its existing collective bargaining agreements with listed contractors in those counties. Although the International's constitution prohibits locals from sending more than two workers out of their jurisdiction to work on a contract,[2] the Original Agreement suspended

---

**2.** The International's constitution provides:

In the event qualified members are available in

this "two-man rule" and permitted freedom of movement between Locals 22 and 25 for an initial one-year trial period. The suspension could be modified or terminated after this period only "if both parties agree with any proposed change." Locals 22 and 25 dispute whether the phrase "both parties" refers to Locals 22 and 25 or to the parties to the reaffiliation agreement (*i.e.*, Local 22 and the International). The Original Agreement does not expressly state that Locals 22 and 25 would have "concurrent" jurisdiction over the four counties.

On August 28, 1997, plaintiff-appellee Sheet Metal Contractors Association of Northern New Jersey ("SMCA"), which bargains collectively with Local 25, brought this action seeking a preliminary injunction and damages on the ground, *inter alia,* that the reaffiliation of Local 22 with the International would effectively undermine the rights of Local 25's minority members in violation of 42 U.S.C. § 1981 and various state statutes. The district court permitted Local 25 and the Joint Apprenticeship Committee of Northern New Jersey ("JAC"), a joint program run by SMCA and Local 25, to intervene as plaintiffs. On September 30, 1997, the district court consolidated the action with the underlying *EEOC* litigation. *See Sheet Metal Contractors Ass'n v. Sheet Metal Workers' Int'l Ass'n,* 978 F.Supp. 529, 530 (S.D.N.Y.1997) ("*Sheet Metal I* "). After a two-day evidentiary hearing, defendants submitted to the district court a Memorandum of Agreement ("Clarified Reaffiliation Agreement"), which states that Locals 22 and 25 "will exercise concurrent jurisdiction over the Four Counties .... [and] will continue to be able to recruit members and organize shops throughout the Four Counties," and that their freedom of movement in the four counties may be suspended only "if both Local 22 and Local 25 agree with any proposed change." Nevertheless, the district court enjoined reaffiliation pursuant to the All Writs

Act, 28 U.S.C. § 1651(a), concluding that "only an injunction preventing the reaffiliation from occurring under [the] terms [of the Original Agreement] can prevent the undermining of the orders issued by this court in the EEOC litigation." *Sheet Metal Contractors Ass'n v. Sheet Metal Workers' Int'l Ass'n,* No. 97 Civ. 6399, 1997 WL 767554, at *10 (S.D.N.Y. Dec.11, 1997) ("*Sheet Metal II* "). The district court also noted that "[t]he Clarified Reaffiliation Agreement ... may serve as a point from which the locals and the international can begin to renegotiate the terms of defendants' reaffiliation to the satisfaction of the court." *Id.* at *11.

Specifically, the district court found that Local 25, SMCA, and JAC jointly operate an apprenticeship program with 51% African-American and Hispanic membership, and that those minority groups comprise 21% of Local 25's overall membership, "a significant improvement over their initial level of participation in the union (although ... beneath the [29.23%] target mandated in the AAA-PO)." *Id.* at *3. In contrast, the district court found, Local 22 has only 8% minority membership, defined more broadly to include African Americans, Hispanics, and (according to Local 22's business manager) "Orientals, American Indians, and females," and these five groups comprise only 22% of Local 22's apprentices. *Id.* The district court also found that Local 22 would not reaffiliate with the International if Local 22 were made subject to the AAAPO. *Id.* at *4. The court found that Local 22 enjoyed several competitive advantages over Local 25: Local 22's wage rate is $2.90 per hour less than that of Local 25, contributing to an employment rate in Local 22 in excess of 90%; and Local 22 does not bear the costs of Local 25's EEOC litigation-related financial obligations, including funding the JAC, which added $.61 per hour to Local 25's labor costs for the fiscal year ending August 31, 1997.[3] *Id.*

the jurisdiction of the local union in which the work is to be performed, not more than two (2) members per job shall, at the request of the employer, leave the jurisdiction of the local union where the shop of the employer is located and enter the jurisdiction of the local union in which the work is to be performed for the purpose of performing such work.

Constitution & Ritual, art. 16 § 9(q) (1994).

**3.** The JAC's operating costs include training and recruitment of minority apprentices, worker education, payment for teachers, and administrative aid.

The court found that reaffiliation would negatively impact Local 25's ability to comply with the AAAPO. *Id.* at *7. Reaffiliation would afford Local 22 the ability to compete with Local 25 for AFL–CIO contracts in Somerset, Sussex, Union and Morris Counties, which constitute 55–60% of Local 25's formerly exclusive territorial jurisdiction and are where 45% of Local 25's membership is employed. *Id.* at *5. The district court expressed skepticism that the proposed reaffiliation would not result in giving Local 22 exclusive jurisdiction over the four counties, and found that even if jurisdiction were concurrent between Locals 22 and 25, Local 25 would be unable to compete with Local 22's lower wage rate. Consequently, Local 25 could expect a "45 percent reduction in work hours . . . [which would] undermine funding of the JAC since operating costs for it are derived from the local's work hours at a rate of $.61/hour." *Id.* at *10. Underfunding the JAC would impair Local 25's efforts to comply with the AAAPO. The court reasoned that

> [w]ith a loss of support for the JAC, employment opportunities for African-Americans and Hispanics will decline. Moreover, the union's viability will be negatively affected by transfers of its members that can be expected with loss of work opportunities. . . . [T]hese factors will combine to undermine Local 25's ability to comply with the court's [affirmative action] orders.

*Id.* This appeal followed.

### Discussion

■ The district court issued the injunction under the All Writs Act to protect the efficacy of the O & J and AAAPO. The All Writs Act provides:

> The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.

28 U.S.C. § 1651(a). The Supreme Court " 'has repeatedly recognized the power of a federal court to issue such commands under the All Writs Act as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained.' " *General Bldg. Contractors Ass'n v. Pennsylvania,* 458 U.S. 375, 401, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982) (quoting *United States v. New York Tel. Co.,* 434 U.S. 159, 172, 98 S.Ct. 364, 54 L.Ed.2d 376 (1977)). As with any injunction, the district court's "preliminary injunction will be overturned only [for an] abuse[ of] discretion. An abuse of discretion may be found when the district court relies on clearly erroneous findings of fact or on an error of law in issuing the injunction." *In Re Baldwin–United Corp.,* 770 F.2d 328, 334 (2d Cir.1985) (citations omitted).

■ At the outset, the plaintiffs argue that the district court need not have relied on the All Writs Act because the International is a party to the *EEOC* litigation and that, even if it is not, it acted "in active concert or participation with [Locals 28 and 25] in the administration of the affairs of Local 28 [and Local 25]" and therefore falls within the O & J. *EEOC v. Local 638,* No. 71 Civ. 2877, slip op. at 2 (S.D.N.Y. Aug. 28, 1975). Therefore, plaintiffs contend that the district court could have held the International in contempt of the O & J. *See, e.g., EEOC 8,* 81 F.3d at 1171 (reviewing contempt order against Local 28 for violating O & J). We disagree.

The district court has twice confirmed that the International is not a party to the *EEOC* litigation. *See Sheet Metal II,* 1997 WL 767554, at *2; *Sheet Metal I,* 978 F.Supp. at 530. The International has never been named as a party in the *EEOC* litigation, *see EEOC 1; EEOC 2; EEOC 3; EEOC 4; EEOC 5; EEOC 6; EEOC 7,* and has never been found liable for unlawful discrimination.[4] Moreover, although the International participates in the governance of Local 25

4. The caption in *EEOC 8,* 81 F.3d 1162, does include the International, but nothing in that opinion or the district court opinion which it affirmed, *EEOC 7,* 889 F.Supp. at 642, suggests that the International was actually a party to that case or was found liable for unlawful discrimina-

tion. Indeed, that case involved a contempt order that could only have applied to defendants already within the O & J. We therefore conclude that the International's inclusion in the caption was in error.

and its constitution is binding on the local, the International has not acted in concert with or participated with Local 25—the party to the *EEOC* litigation—to violate the O & J. *See Regal Knitwear Co. v. NLRB,* 324 U.S. 9, 14, 65 S.Ct. 478, 89 L.Ed. 661 (1945) ("in active concert" language prevents non-parties from assisting *party* to evade an order); *Vuitton et Fils S.A. v. Carousel Handbags,* 592 F.2d 126, 129–30 (2d Cir.1979) (remanding to determine whether non-party aided and abetted party's violation of court order); *Reliance Ins. Co. v. Mast Constr. Co.,* 84 F.3d 372, 377 (10th Cir.1996) ("active concert or participation" language applies to "non-party with actual notice [of order who] aids or abets a named defendant ... in violating the order"); *see also Zenith Radio Corp. v. Hazeltine Research, Inc.,* 395 U.S. 100, 112, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969) (non-party parent company not properly enjoined where, among other factors, no determination was made that parent was in active concert or participation with wholly owned subsidiary). To the contrary, if the International has acted in concert with anyone, it was with Local 22, a non-party to the *EEOC* litigation. Thus, the district court could not have used its contempt powers against the International to enjoin the reaffiliation. As the district court determined, the only proper basis for enjoining the reaffiliation was the All Writs Act.

The parties also dispute the correct legal standard for issuing injunctions under the All Writs Act. Defendants contend that, in issuing orders pursuant to the All Writs Act, a district court may impose only "minor and ancillary" burdens upon non-parties who have not been found liable for unlawful acts. Defendants rely upon *General Bldg. Contractors,* 458 U.S. at 398, 102 S.Ct. 3141, and *EEOC 8,* 81 F.3d at 1179–81. Both cases, however, involved equitable injunctions directed at parties to the litigation who had not been the subject of liability findings, and not, as here, at non-parties. The issue in *General Bldg. Contractors,* for example, was "whether a party not subject to liability for violating the law may nonetheless be assessed a proportionate share of the costs of implementing a decree to assure nondiscriminatory practices on the part of another party which *was*

properly enjoined." 458 U.S. at 398, 102 S.Ct. 3141. Adopting the view that only liable parties should in general be made to pay for remedial injunctive relief, the Supreme Court determined that innocent parties could only be ordered to provide "minor and ancillary" remedial relief and, therefore, that the contractors could not be required to meet minority hiring goals, make quarterly reports detailing their compliance with those goals, recruit, hire and train minority workers, and share the financial cost of the remedial decree. *Id.* at 399–400, 102 S.Ct. 3141. We followed *General Bldg. Contractors* in *EEOC 8,* holding that innocent contractors that were parties to a discrimination suit could not be required under the All Writs Act to create a new hiring hall and job rotation system to remedy discrimination by a local labor union. 81 F.3d at 1180. The Supreme Court also observed in *General Bldg. Contractors* that the All Writs Act was "completely wide of the mark" in justifying the requested relief, because "[t]here was no need for the District Court to treat petitioners as strangers to [the] lawsuit, and therefore to rely upon some extraordinary form of process or writ to bring them before the court.... Petitioners were parties to the action in every sense of the word, and subject to the jurisdiction of the District Court." 458 U.S. at 401, 102 S.Ct. 3141.

In contrast to *General Bldg. Contractors,* the defendants in the instant case were not parties to the *EEOC* litigation nor have they been asked to bear directly the cost of an equitable remedy. The district court did not, for example, require defendants to pay money into a settlement or to institute their own affirmative action program. The district court's injunction, unlike those in *General Bldg. Contractors* and *EEOC 8,* was focused not upon placing part of the cost of an equitable remedy upon the shoulders of an innocent party to the litigation, but rather upon preventing "persons who, though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of justice," from doing so. *In Re Baldwin–United,* 770 F.2d at 338 (quotation marks and citation omitted) (federal

court has authority under All Writs Act to prevent third parties from litigating claims in state court relating to existing federal securities class action suit); *see also New York Tel. Co.*, 434 U.S. at 171–75, 98 S.Ct. 364 (requiring innocent non-party phone company to install phone registers to implement search warrant); *Yonkers Racing Corp. v. City of Yonkers*, 858 F.2d 855, 863–65 (2d. Cir.1988) (federal court has authority under All Writs Act to remove state court action of innocent third-party to federal court to protect consent decree). By affirmatively entering into an agreement to reaffiliate, defendants have taken a step that has some likelihood of frustrating the implementation of the O & J and AAAPO. We therefore do not apply a "minor and ancillary" test in this case, but rather look to whether the district court's preliminary injunction under the All Writs Act was "necessary or appropriate in aid of [its] jurisdiction[ ]" over Local 25 "and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a).

■ Turning to the facts in light of the foregoing legal standard, we conclude that, although this is a very close case, the district court's injunction was neither necessary nor appropriate to preserve the integrity of the O & J and AAAPO.

We note first that, although the International is not a party to the *EEOC* litigation, it does participate in the governance of Local 25 and its constitution binds Local 25. Under its constitution, the International is vested with the power "to suspend the charter of any local union ... for failure ... to comply with the provisions of this Constitution" or "for disregarding the instructions, decisions, or orders properly issued by" the International; "to approve, modify, revise, defer, suspend or reverse any decision of a local union ... [that] is contrary to ... this Constitution or the established policies of [the International]"; and "to specify, designate or change the specific territory ... over which each local union ... shall exercise jurisdiction, to organize and charter additional local unions[,] ... to separate and divide membership of any local union[,] ... [and] to merge two or more local unions." Constitution and Ritual, art. 3 §§ 2(a), 2(e), 2(g) (1994). The

International has considerably more control over Local 25's affairs than a typical non-party and, therefore, its proposed reaffiliation must be examined more closely than, for example, a reaffiliation between Local 22 and another international association of which Local 25 is not a member. That Local 28's former business manager, Arthur Moore, negotiated the reaffiliation with Local 22 as International's General President recommends our even closer scrutiny.

Nevertheless, several factors in this case persuade us that the district court's injunction was neither necessary nor appropriate to preserve the integrity of the O & J and AAAPO. First, plaintiffs have not alleged and the district court did not find that, in proposing to reaffiliate, defendants acted with an intent to undermine the O & J or AAAPO. Nor has the International created a new local to replace all or part of Local 25, which would suggest such an intent. Rather, Local 22 existed and exercised exclusive jurisdiction over the four counties prior to Local 25's creation. We also think that it is significant that, both prior to and following Local 22's disaffiliation from the International, no local sheet metal union in the four counties has ever been found to have engaged in unlawful discrimination.

Of further significance is the fact that the injunction denies Local 22 important statutory and First Amendment rights of association. *See* 29 U.S.C. § 157 ("[e]mployees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing"); *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 918–19, 933, 102 S.Ct. 3409, 73 L.Ed.2d 1215 (1982) ("[O]ne of the foundations of our society is the right of individuals to combine with other persons in pursuit of a common goal by lawful means."). The injunction also denies Local 22 the economic benefit of competing for AFL–CIO contracts in the four counties, and it denies the International an opportunity to exclude other international associations from the New Jersey sheet metal market.

Moreover, the district court's rationale for the injunction-that Local 22's ability to compete successfully with Local 25 for AFL–CIO

contracts would reduce Local 25's total work hours and therefore its ability to fund the AAAPO—would apply if Local 22 affiliated with *any* international association in the four counties. Under any such affiliation, Local 22 would compete with Local 25 for AFL–CIO contracts while maintaining the advantage of a lower wage scale, with identical economic consequences for Local 25. Denying Local 22 the right to affiliate with the International is hardly different, in our view, from protecting Local 25 in the marketplace by enjoining Local 22 from any international affiliation or, for that matter, by enjoining creditors from taking action against distressed contractors employing Local 25 workers. We do not think that the All Writs Act, at least in the circumstances presented here, should be read to authorize the district court to intervene in the marketplace in order to confer economic favors on an entity covered by an affirmative action plan or to bring economic disfavor on an innocent non-party in competition with such an entity.

We also note that, although the AAAPO raises Local 25's costs by $.61/hour, more than 78% of Local 22's $2.90 wage-rate advantage over Local 25 is attributable to factors *other* than the AAAPO. Local 22 uses non-union draftsmen, helpers, pre-apprentices, and classified workers, and its apprentices attend school at their own expense, and not at the expense of Local 22's contractors. These additional measures, which Local 25 has not adopted, contribute to Local 22's relatively lower costs. The injunction would effectively penalize these market efficiencies.

Our view that this injunction is neither necessary nor appropriate is also premised upon defendants' representation to this court and to the district court that Locals 22 and 25 shall share concurrent jurisdiction over the four counties and that Local 25 will have veto power over any decision to reimpose the two-man rule. *See* Clarified Reaffiliation Agreement, ¶¶ 3, 16.[5] If the Agreement had granted Local 22 exclusive jurisdiction over the four counties, we would be faced with a different case in that a local union subject to

a court-ordered affirmative action plan would be completely replaced by one not subject to such a plan. Of course, it is the case here that the four counties were not covered by the original O & J and AAAPO and became subject to Local 25's jurisdiction only when Local 22 disaffiliated from the international. The restoration of Local 22 to its original exclusive jurisdiction would not necessarily be a subterfuge intended to evade the affirmative action plan. However, given the defendants' representations that Locals 22 and 25 will share concurrent jurisdiction over the four counties, we need not address this issue.

Finally, although competition from Local 22 will likely "negatively affect[ ]" Local 25's ability to comply with the O & J and AAAPO, *Sheet Metal II*, 1997 WL 767554, at *10, it is significant that the district court did not find that reaffiliation would render Local 25's compliance with the O & J and AAAPO impossible or even unlikely. Such limited "negative [e]ffect[s]" upon the court's orders are not sufficient in this case to justify use of the All Writs Act.

In sum, in light of defendants' lack of intent to frustrate the O & J and AAAPO, Local 22's prior affiliation with the International and previous exclusive jurisdiction over the four counties, the lack of a finding of unlawful discrimination by Local 22 in the four counties, the importance of defendants' associational rights, the attenuated economic relationship between defendants' reaffiliation and Local 25's AAAPO, the fact that Local 22's competitive advantage over Local 25 results primarily from factors unrelated to the AAAPO, Local 22's ability to affiliate with another international association and thereby compete with Local 25 under identical economic conditions, Local 25's continued, albeit more limited, ability to meet its affirmative action obligations notwithstanding the reaffiliation, and the fact that Locals 22 and 25 will share concurrent jurisdiction in the four counties, we believe that the district court abused its discretion in granting the injunction.

---

**5.** We note that the EEOC argues on appeal that the district court based its decision on the assumption that defendants' reaffiliation contemplated concurrent jurisdiction. *See* EEOC's Br. at 14.

*Conclusion*

We have considered all of plaintiffs' other arguments on appeal and have found in them no basis for affirmance. For the reasons set forth above, the judgment of the district court is reversed and the injunction barring Local 22 from reaffiliating with the International is vacated. Costs shall be borne by appellees.