266 F.3d 45 (2nd Cir. 2001)
 UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, AFL-CIO, THE COMMISSION OF LA COSA NOSTRA, ANTHONY SALERNO, also known as Fat Tony, MATTHEW IANNIELO, also known as Matty the Horse, ANTHONY PROVENZANO, also known as Tony Pro, NUNZIO PROVENZANO, also known as Nunzi Pro, ANTHONY CORALLO, also known as Tony Ducks, SALVATORE SANTORO, also known as Tom Mix, CHRISTOPHER FURNARI, SR., also known as Christie Tick, FRANK MANZO, CARMINE PERSICO, also known as Junior, also known as The Snake, GENNARO LANGELLA, also known as Gerry Lang, PHILIP RASTELLI, also known as Rusty, NICHOLAS MARANGELLO, also known as Nicky Glasses, JOSEPH MASSINO, also known as Joey Messina, ANTHONY FICAROTTA, also known as Figgy, EUGENE BOFFA, SR., FRANCIS SHEERAN, MILTON ROCKMAN, also known as Maishe, JOHN TRONOLONE, also known as Peanuts, JOSEPH JOHN AIUPPA, also known as Joey O'Brien, also known as Joey Aiuppa, JOHN PHILIP CERONE, also known as Jackie the Lackie, also known as Jackie Cerone, JOSEPH LOMBARDO, also known as Joey the Clown, ANGELO LAPIETRA, also known as The Nutcracker, FRANK BALISTRIERI, also known as Mr. B, CARL ANGELO DELUNA, also known as
Toughy, CARL CIVELLA also known as Corky, ANTHONY THOMAS CIVELLA, also known as Tony Ripe, GENERAL EXECUTIVE BOARD, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, JACKIE PRESSER, General President, WELDON MATHIS, General Secretary Treasurer, JOSEPH TREROTOLA, First Vice President, also known as Joe T, ROBERT HOLMES, SR., Second Vice President, ROBERT HOLMES, SR., WILLIAM MCCARTHY, Third Vice President, JOSEPH W. MORGAN, Fourth Vice President, EDWARD M. LAWSON, Fifth Vice President, ARNOLD WEINMEISTER, Sixth Vice President, JOHN H. CLEVELAND, Seventh Vice President, MAURICE R. SCHURR, Eighth Vice President, DONALD PETERS, Ninth Vice President, WALTER J. SHEA, Tenth Vice President, HAROLD FRIEDMAN, Eleventh Vice President, JACK D. COX, Twelfth Vice President, DON L. WEST, Thirteenth Vice President, MICHAEL J. RILEY, Fourteenth Vice President, THEODORE COZZA, Fifteenth Vice President, DANIEL LIGUROTIS, Sixteenth Vice President, SALVATORE PROVENZANO, Former Vice President, also known as Sammy Pro, Defendants,
INTERNATIONAL BROTHERHOOD OF TEAMSTERS, Defendant-Appellee,
VINCENT SOMBROTTO and EDWIN GONZALEZ, LOCAL 116, PRODUCTION AND MAINTENANCE EMPLOYEES' UNION, Appellants.
 Docket No. 00-6116
August Term 2000
 UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT
 Argued: January 22, 2001
Decided: July 17, 2001
 
 Vincent Sombrotto, Edwin Gonzalez, and Local 116, Production and Maintenance Employees' Union, appeal from a judgment of the United States District Court for the Southern District of New York (David N. Edelstein, District Judge) enjoining them from organizing workers employed by several New Jersey companies.
 Affirmed in Part, Vacated in Part, and Remanded.
 IRVING ANOLIK, ESQ., New York, New York, for Appellants.
 ANDREW W. SCHILLING, Assistant United States Attorney (Mary Jo White, United States Attorney, Southern District of New York, and Gideon A. Schor, Assistant United States Attorney, on the brief), New York, New York, for Plaintiff-Appellee United States.
 LAURA MATLOW, Vladeck, Waldman, Elias & Engelhard, PC (Larry Cary, on the brief), New York, New York, for Appellee IBT.
 Before: WALKER, Chief Judge, PARKER and KATZMANN, Circuit Judges.
 PER CURIAM:
 
 
 1
 Vincent Sombrotto, Edwin Gonzalez, and Local 116, Production and Maintenance Employees' Union, appeal from a judgment of the United States District Court for the Southern District of New York (David N. Edelstein,[1] District Judge) enjoining them from organizing workers employed by several New Jersey companies. Although we find that injunctive relief is justified, the injunction is overbroad in certain respects and therefore must be modified.
 
 BACKGROUND
 
 2
 This appeal is among the progeny of a civil action brought by the government under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964, to root out the corrupt influence of organized crime in the International Brotherhood of Teamsters ("IBT"). See United States v. IBT, 708 F. Supp. 1388 (S.D.N.Y. 1989). This case is among the scores of lawsuits initiated pursuant to the consent decree imposed in the government's suit, which reorganized the operations of IBT and provided for their oversight by court-appointed officers. Our discussion of the facts assumes some familiarity with the history of this massive litigation. See, e.g., United States v. IBT, 247 F.3d 370 (2d Cir. 2001); United States v. IBT, 728 F. Supp. 1032 (S.D.N.Y.), aff'd, 907 F.2d 277 (2d Cir. 1990).
 
 
 3
 Appellants Vincent Sombrotto and Edwin Gonzalez were members of IBT until 1994, when they were removed from their respective positions as president and secretary-treasurer of IBT Local 966. At that time, Local 966 was placed in trusteeship, by order of IBT's Independent Review Board ("IRB"), which was created under the consent decree to oversee compliance with the decree. The IRB had determined that Local 966 had been under the influence of members of organized crime families. The IRB found that Sombrotto, who had little union experience, had rapidly ascended to control of Local 966 after the resignation or conviction of its previous officers and that Sombrotto's rise was due in part to his association with organized crime.
 
 
 4
 After presentation of the IRB's recommendations to an IBT Hearing Panel ("Panel"), the Panel found Sombrotto guilty of a variety of charges, including embezzlement, dual unionism, and other breaches of fiduciary duty. Gonzalez was found guilty of similar charges. The Panel recommended permanent expulsion of both Sombrotto and Gonzalez from the IBT, and the IBT General President and the IBT General Executive Board concurred. Sombrotto and Gonzalez were accordingly barred for life from seeking or accepting employment with the IBT.
 
 
 5
 Shortly after being forced out of the IBT, Sombrotto and Gonzalez took control of an independent union, appellant Local 116, Production and Maintenance Employees' Union ("Local 116"). Sombrotto soon became president of Local 116, and appointed Gonzalez as secretary-treasurer.
 
 
 6
 As officers of Local 116, Sombrotto and Gonzalez sought to have Local 116 become the exclusive collective bargaining representative of employees of Telesco, Inc., doing business as State Warehouse (collectively "State Warehouse") in Secaucus, New Jersey. They also attempted to enroll in Local 116 State Warehouse employees who were members of IBT Local 807. On January 3, 2000, Local 116 filed a petition with the National Labor Relations Board ("NLRB") seeking an election for the collective bargaining representative of State Warehouse employees.
 
 
 7
 On January 25, 2000, the IBT sought an order from the district court, pursuant to the consent decree, enjoining Sombrotto, Gonzalez, and Local 116's activities insofar as they might affect current IBT members. After a hearing, the district court issued an injunction on February 1, 2000, which, in relevant part, stated as follows:
 
 
 8
 (1) Respondents Local 116... or any labor organization controlled by [Sombrotto or Gonzalez] or in which either Sombrotto or Gonzalez serve as officers or employees, are enjoined and restrained from engaging in organizing activities... involv[ing] employees of... State Warehouse[;]
 
 
 9
 (2) Respondents Local 116, Sombrotto and Gonzalez are enjoined and restrained from acting as collective bargaining representative for any employees of State Warehouse... or in accepting any such employees as members of Local 116;
 
 
 10
 (3) Respondents are enjoined and restrained from engaging in organizing... involv[ing] employees whose exclusive collective bargaining representative is [IBT] or any of its affiliated local unions;
 
 
 11
 (4) Respondents are directed to withdraw with prejudice the representation petition filed at Region 22 of the [NLRB] in case number 22-RC-11847 in which Sombrotto and Local 116 seek to represent employees of State Warehouse;
 
 
 12
 (5) Respondents are enjoined from intervening in any representation proceedings at the NLRB where the IBT or any of its affiliates is a party, or filing petitions for representation at the NLRB... concerning any location where the IBT or any of its affiliated local union[s] is the collective bargaining representative for employees.
 
 
 13
 Sombrotto, Gonzalez, and Local 116 appealed.
 
 DISCUSSION
 
 14
 Appellants argue principally that the injunction was in excess of the district court's authority under the consent decree and that the injunction was not "necessary or appropriate in aid of [the court's] jurisdiction" as required by the All Writs Act ("the Act"), 28 U.S.C. § 1651(a), which formed the basis of the injunction. While we believe that injunctive relief was justified by the consent decree and appellants' activities, we find that portions of the injunction go further than necessary to enforce the consent decree.
 
 
 15
 We review de novo the district court's interpretation of the IBT consent decree. See United States v. IBT, 141 F.3d 405, 408 (2d Cir. 1998). We review the district court's grant of an injunction under the All Writs Act for abuse of discretion. See Sheet Metal Contractors Ass'n v. Sheet Metal Workers' Int'l Ass'n, 157 F.3d 78, 82 (2d Cir. 1998).
 
 
 16
 Appellants argue that, because they are no longer members of the IBT and were not individually made parties to the RICO action or its consent decree, the district court lacked authority to enjoin them pursuant to the decree. We disagree. The All Writs Act states that federal courts may "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). That includes the power to "issue such commands... as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained." Sheet Metal Contractors Ass'n, 157 F.3d at 82 (quoting General Bldg. Contractors Ass'n v. Pennsylvania, 458 U.S. 375, 401 (1982)). The Act's grant of authority is plainly broad and, on its face, makes no distinction between parties and nonparties. Indeed, the Act's reference to writs issued "in aid of... jurisdiction[]" encompasses orders imposed against third parties to the extent such parties are poised to interfere with the implementation of a prior judicial order. We have held accordingly that
 
 
 17
 [a]n important feature of the All Writs Act is its grant of authority to enjoin and bind non-parties to an action when needed to preserve the court's ability to reach or enforce its decision in a case over which it has proper jurisdiction. The power to bind non parties distinguishes injunctions issued under the Act from injunctions issued in situations in which the activities of the third parties do not interfere with the very conduct of the proceeding before the court.
 
 
 18
 In re Baldwin-United Corp., 770 F.2d 328, 338 (2d Cir. 1985) (citations omitted); see also Sheet Metal Contractors Ass'n, 157 F.3d at 82-83 (holding All Writs Act, rather than court's contempt power, as proper basis for injunction of nonparty to the original order); United States v. IBT, 907 F.2d 277, 281 (2d Cir. 1990). A district court may issue such a writ against any person with the "minimum contacts" with the forum necessary to the court's exercise of personal jurisdiction. IBT, 907 F.2d at 281.
 
 
 19
 Sombrotto and Gonzalez easily fit that bill. Both were subject to the consent decree while members of the IBT and thereby within the district court's jurisdiction. We fail to see how their having been forced out of the IBT ipso facto deprives the district court of the jurisdiction over them it unquestionably had while they were members of the IBT.
 
 
 20
 Our decision in Association for Retarded Citizens of Connecticut, Inc. v. Thorne, 30 F.3d 367 (2d Cir. 1994), is not to the contrary. We held there, in rather broad terms, that the district court's decision to enforce a consent decree against a nonparty was an abuse of discretion. See id. at 370 ("While a district court has authority to enforce a judicially approved consent decree against the parties to it, a district court that enforces the decree against a nonparty acts beyond its jurisdiction and thus beyond the scope of the All Writs Act."). The district court there had attempted joinder of a non-party after the consent decree had been adopted. Here, on the other hand, the district court has sought not to bind appellants to the consent decree, but to enjoin them from acts that would frustrate the consent decree's operation on parties that are bound to the decree. In Association for Retarded Citizens, joinder would have subjected the defendant to contempt sanctions for its violations of the consent decree, while here appellants can be sanctioned only for violations of the instant injunction, not of the consent decree.
 
 
 21
 We also conclude that, with certain exceptions noted below, the injunction was "necessary or appropriate" to the district court's protection of its prior decree and therefore not an abuse of the court's discretion. By enjoining appellants from seeking to draw IBT-member employees of State Warehouse away from the IBT Local to Local 116, the district court was protecting the operation of that portion of the consent decree which states that "members and employees of the IBT, are hereby permanently enjoined from... knowingly associating with any... person otherwise enjoined from participating in union affairs." Sombrotto and Gonzalez had been effectively "otherwise enjoined" from participating in IBT affairs: they were permanently barred from the IBT by the IRB pursuant to the disciplinary process established in the consent decree. Prohibiting them from contacting IBT members to solicit their membership in Local 116 was within the district court's discretion in protecting the operation of the consent decree's prohibition on association.
 
 
 22
 While upholding the district court's power to issue the injunction, we nevertheless find that injunction to be overbroad. We discern no basis in the consent decree for enjoining appellants from labor-organizing activities that do not bring them into direct association with members of the IBT. Insofar as appellants seek to attract for Local 116 new members who are not currently members or employees of the IBT or its local unions, they pose no threat to the vitality of the consent decree. Indeed, counsel for the IBT conceded as much before the district court, stating that the injunction sought by the IBT would leave Local 116 free to organize anyone outside the IBT or its local unions.
 
 
 23
 We are also concerned with the injunction's interference with appellants' ability to petition the NLRB. Paragraphs 4 and 5 of the injunction strike us as unnecessary given the other parts of the injunction, which we leave intact, that prohibit appellants from "raiding" IBT local unions and from becoming collective bargaining representatives for current IBT members. While one might argue that their participation in the NLRB proceeding would necessarily bring them into contact with the IBT's representatives in that proceeding, contact of that sort would no more violate the consent decree than does appellants' participation in the instant appeal, to which the IBT is a party.
 
 
 24
 Moreover, paragraphs 4 and 5 of the injunction risk interference with appellants' First Amendment right of petition, see Friedl v. City of New York, 210 F.3d 79, 86 (2d Cir. 2000), and their rights under section 7 of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 157. In the past we have considered such factors in deciding whether an All Writs Act injunction is "necessary or appropriate" to protection of the district court's jurisdiction. See Sheet Metal Contractors Ass'n, 157 F.3d at 84 (considering First Amendment interests in invalidating injunction). In any event, if the remaining provisions of the injunction, with its concomitant promise of contempt sanctions for noncompliance, fail to dissuade appellants from interfering with the consent decree in the prosecution of an NLRB petition, the district court is free to consider supplemental injunctive relief more narrowly tailored to the particular risk of interference.
 
 
 25
 Accordingly, we vacate those portions of the injunction that do not pertain to appellants' direct association with members or employees of the IBT or its local unions. Paragraphs 1, 4, and 5 of the injunction are therefore vacated in full. Paragraph 2 is vacated except insofar as it prohibits appellants from acting as collective bargaining representative for members of the IBT or its local unions. Paragraph 3 is vacated only to the extent it prohibits appellants from organizing employees of State Warehouse who are not members of the IBT or its local unions. The district court is instructed to reissue the injunction as modified by this opinion.
 
 CONCLUSION
 
 26
 We have reviewed the remainder of the appellants' claims and find them to lack merit. The injunction entered by the district court is therefore affirmed in part and vacated in part, and the case is remanded to the district court with instruction to modify the injunction consistent with this opinion.
 
 
 
 NOTE:
 
 
 [1]
 Judge Edelstein passed away on August 19, 2000.