UNITED STATES OF AMERICA and Robert B. Reich, Secretary of Labor, Plaintiffs,

v.

MASON TENDERS DISTRICT COUNCIL OF GREATER NEW YORK, et al., Defendants.

No. 94 Civ. 6487(RWS).

United States District Court, S.D. New York.

May 30, 2002.

James B. Comey, United States Attorney for the Southern District of New York by Andrew W. Schilling, Assistant U.S. Attorney, New York City, for Plaintiffs.

Meyer, Suozzi, English & Klein by Lowell Peterson, New York City, for Defendant Mason Tenders District Council.

Annmarie P. Venuti PLLC by Annmarie P. Venuti, Manhasset, NY, for Defendants Vincent Sombrotto, Edwin Gonzalez and Production and Maintenance Workers Local 116.

Lawrence B. Pedowitz, Wachtell, Lipton, Rosen & Katz, New York City, Court–Appointed Monitor.

## OPINION

SWEET, District Judge.

The Mason Tenders District Council ("MTDC") has moved for an order under Rule 65 of the Federal Rules of Civil Procedure enjoining Vincent Sombrotto ("Sombrotto"), Edwin Gonzalez ("Gonzalez") and Local 116, Production and Maintenance Employees Union ("Local 116") (collectively "Respondents") from contacting MTDC members and soliciting them to join Local 116. For the following reasons, a preliminary injunction is granted.

### Parties

MTDC is a labor organization that represents laborers and other workers in the New York metropolitan area. It is affiliated with the Laborers' International Union of North America ("LIUNA"). Since 1996, it has been a party to a Consent Decree entered by this Court which includes an injunction designed to protect the membership from contact with labor racketeers. The Consent Decree is modeled on one covering the International Brotherhood of Teamsters ("IBT" or the "Teamsters").

Sombrotto is President and Gonzalez is Treasurer of Local 116. They were expelled from the IBT and have been enjoined under the IBT Consent Decree from soliciting or trying to represent Teamster-represented workers.

Local 116 is a union that is not affiliated with MTDC, LIUNA, or IBT.

### Prior Proceedings

MTDC is a party to a Consent Decree entered by this Court on December 27, 1994, and extended by a Supplemental Consent Decree as a result of an alleged pattern of organized corruption at the MTDC. The MTDC entered the Consent Decree after LIUNA imposed an emergency trusteeship in light of concerns that criminal elements controlled certain local union activity, with the cooperation of corrupt employers. *Mason Tenders District Council v. LIUNA,* 884 F.Supp. 823, 830 (S.D.N.Y.1995).

The purposes of the Consent Decree include ensuring "that the District Council shall be maintained and run democratically, with integrity, solely for the benefit of its members, and without unlawful outside influence." Consent Decree, at 4. The Consent Decree, *inter alia,* enjoins MTDC members from knowingly associating with "any person prohibited from participating in union affairs." *Id.* at 5, ¶ 3.

Pursuant to this Consent Decree, the MTDC moved for an injunction against the Respondents on January 29, 2002. The Respondents replied on February 26, 2002, and the MTDC submitted a surreply on March 13, 2002. In addition, both plaintiff United States of America and the court-appointed Monitor to the MTDC who is charged with ensuring that the Consent Decree is followed submitted letters in support of MTDC's motion on March 13, 2002, and January 17, 2002, respectively. The motion was considered fully submitted on March 13, 2002.

### Facts

#### I. *The Formation of Local 108*

On April 1, 1999, Waste Material, Recycling & General Industrial Local 108 ("Lo-

cal 108"), which is affiliated with the MTDC, was formed from three other LIU-NA local unions which had been allegedly mismanaged: Local 958, Local 445, and Local 970.

In the fall of 1997, LIUNA placed its Local 445 into trusteeship after its Business Manager had illegally transferred most of that Local's membership into an "independent" union called "LIFE" that was not part of LIUNA or the AFL–CIO.

Shortly after Local 445 was placed into trusteeship, Gregg McCarthy resigned as the Business Manager of Local 958 and became the administrator of the Local 958–sponsored employee benefit funds. Local 958 members complained about substandard collective bargaining agreements, poor contract enforcement and a lack of benefits.

Respondent Gonzalez was a Business Agent/Field Representative at Local 958. Local 116, of which Respondent Sombrotto was an officer, ostensibly represented Local 958's staff, including Gonzalez, and the staff of the Local 958 benefit funds.

On February 9, 1998, LIUNA placed Local 958 in a trusteeship. A hearing officer, Peter F. Vaira, upheld the appropriateness of the decision. Local 958 shared expenses in organizing[1] with Teamsters Local 966. Hearing Officer Vaira noted that Local 958 officers had entered into a collective bargaining agreement "with an individual who was dismissed from the IBT for embezzlement and dual unionism" and that it was "an affront to the Local 958 membership and a violation of the LIUNA" Ethical Practices Code. Hearing Officer Vaira also found that Local 958 was under the control of Gregg McCarthy, a member of a family associated with labor racketeering,[2] even though he had resigned from formal leadership under pressure.

## II. *Sombrotto's and Gonzalez's Expulsion From Union Affairs*

It is undisputed that respondents Sombrotto and Gonzalez were expelled from the IBT and permanently enjoined from participating in the affairs of that union. It is also undisputed that they have not been so expelled from LIUNA or MTDC.

After his expulsion from IBT, Gonzalez became a Business Agent/Field Representative for LIUNA Local 958. Since 1999, Gonzalez has been treasurer of Local 116. Sombrotto has been President of Local 116 since 1996.

## III. *Local 116's Interactions With MTDC*

MTDC alleges that the Respondents, through Local 116, have engaged in a series of activities, including making "sweetheart deals," using ill-gotten information about when Local 108's contracts are about to or have expired to challenge Local 108's control, and raiding Local 108 shops. The Respondents dispute all of these allegations.

While there is a factual dispute with regard to whether Local 116 is committing illegal acts in its organization efforts, the essential facts are uncontroverted. It is undisputed that Sombrotto, Gonzalez, and

---

1. This action suggests dual unionism and collusion, both of which are harmful to union members.

2. McCarthy's father, Jack McCarthy, founded the National Consultants Associated ("NCA"). This entity was investigated by the McClellan subcommittee of the United States Senate, which promulgated a report entitled, "Labor Racketeering Activities of Jack McCarthy and National Consultants Associated Ltd." NCA is still active, and Randy McCarthy is an NCA officer. NCA represents at least one employer of a Local 958 shop.

Union 116 have attempted to organize current or former Local 108 shops. Local 116, *inter alia*, (1) solicited MTDC members at Filiberto Brothers in Brooklyn, New York in December 1999; (2) intervened in proceedings involving BFI of New York, which has MTDC and IBT shops, brought by the IBT seeking to represent all BFI workers in June 1999; (3) filed a representation petition for Basin Haulage Inc., represented by Local 108, in February 2001, and, upon losing to Local 108, filed objections to the elections; and (4) solicited support for Local 116 during the window periods[3] at Chambers Paper Fibers in Brooklyn, New York and at Hunt's Point Recycling.

Local 116 also represents Waste Management of New York and is active on Long Island, New York. Sombrotto and Gonzalez are officers of Local 116, and often take part in these activities, and come into contact with MTDC members as a result. Sombrotto usually appears at NLRB proceedings.

### Discussion

MTDC requests that pursuant to this Court's power under the All Writs Act the Respondents be enjoined from (1) organizing, attempting to organize, or acting as collective bargaining representative for any current member of the MTDC of its affiliate local unions; (2) raiding the MTDC; and (3) soliciting any member of the MTDC and any local union affiliated with MTDC to join Local 116 or any other labor organization controlled by Sombrotto or Gonzalez or in which Sombrotto or Gonzalez serves as an officer.

### I. Preliminary Injunction Standards

■ The standard for granting a preliminary injunction under Rule 65 in this circuit is "(1) a showing of irreparable injury and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and the balance of hardships tipping in favor of the movant." *Civic Ass'n of Deaf v. Giuliani*, 915 F.Supp. 622, 631 (S.D.N.Y.1996) (*citing Blum v. Schlegel*, 18 F.3d 1005, 1010 (2d Cir.1994)); *see also Fun–Damental Too, Ltd. v. Gemmy Indus. Corp.*, 111 F.3d 993, 998–99 (2d Cir.1997).

■ MTDC has shown the threat of irreparable injury. Sombrotto and Gonzalez were banished from the Teamsters because of a wide range of misconduct, including embezzlement, other financial misconduct, negotiation of sham collective bargaining agreements and assisting independent unions, including one that was formerly controlled by labor racketeer Jack McCarthy and is currently represented by Jack's son, Bryan.

That organization found it necessary to permanently banish Sombrotto and Gonzalez from contact with its members in order to preserve the reforms that had taken place. Gonzalez and Sombrotto do not deny that they and Local 116 have had contact with MTDC members. Given the Respondents' background of misconduct and current and potential future contact with MTDC members, there is a threat of irreparable harm to the reforms brought about through the MTDC Consent Decree.

The likelihood of success on the merits is also great because, as discussed below,

---

**3.** Under the National Labor Relations Act, as amended, a union cannot file a petition with the National Labor Relations Board ("NLRB") to represent the employees at a particular shop if a collective bargaining agreement with another union is in place, with two exceptions: a petition can be filed (1) during the "window period" (between 60 and 90 days before the contract expires); and (2) after the contract has expired. *Deluxe Metal Furniture*, 121 N.L.R.B. 995 (1958).

an injunction is necessary and appropriate under the All Writs Act to enforce this Court's earlier order, the MTDC Consent Decree.

## II. *All Writs Act*

■ The All Writs Act states that federal courts may "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). That includes the power to "issue such commands ... as may be necessary or appropriate to effectuate and to prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained." *United States v. International Brotherhood of Teamsters,* 266 F.3d 45, 49–50 (2d Cir.2001) ["*IBT*"] (*quoting Sheet Metal Contractors Ass'n v. Sheet Metal Workers' Int'l Ass'n,* 157 F.3d 78, 82 (2d Cir.1998) (*quoting General Bldg. Contractors Ass'n v. Pennsylvania,* 458 U.S. 375, 401, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982))).

■ "The Act's grant of authority is plainly broad and, on its face, makes no distinctions between parties and nonparties." *IBT,* 266 F.3d at 50. The Act's reference to writs issued "in aid of ... jurisdiction [ ]" encompasses orders imposed against third parties to the extent such parties are poised to interfere with the implementation of a prior judicial order:

An important feature of the All Writs Act is its grant of authority to enjoin and bind non-parties to an action when needed to preserve the court's ability to reach or enforce its decision in a case over which it has proper jurisdiction. The power to bind non-parties distinguishes injunctions issued under the Act

from injunctions issued in situations in which the activities of third parties do not interfere with the very conduct of the proceeding before the court.

*In re Baldwin–United Corp.,* 770 F.2d 328, 338 (2d Cir.1985) (citations omitted); *see also Sheet Metal Contractors,* 157 F.3d at 82–83 (holding All Writs Act, rather than court's contempt power, as proper basis for injunction of nonparty to the original order); *United States v. IBT,* 907 F.2d 277, 281 (2d Cir.1990). A district court may issue such a writ against any person with the "minimum contacts" with the forum necessary to the court's exercise of personal jurisdiction. *IBT,* 266 F.3d at 50 (*citing IBT,* 907 F.2d at 281).

The situation here is very similar to that discussed by the Second Circuit in *United States v. International Brotherhood of Teamsters,* 266 F.3d 45 (2d Cir.2001), in which the IBT moved for an injunction preventing Sombrotto and Gonzalez from organizing workers employed by certain New Jersey employers inasmuch as such activities interfered with a Consent Decree entered into by the IBT that enjoined its members from associating with those who were banned from union affairs. The Second Circuit affirmed in part, even though Sombrotto and Gonzalez were not at the time parties to the Consent Decree, under the All Writs Act. The Court determined that there existed the necessary "minimum contacts" to satisfy due process because both were subject to the Consent Decree while members of the IBT.[4] *Id.* at 50. The fact that they were forced out of the IBT did not deprive the district court of jurisdiction over them. *Id.*

The Court made the important distinction that Sombrotto and Gonzalez were not

---

4. The Court did not, however, require that Sombrotto and Gonzalez have been a party to the consent decree in order to establish jurisdiction. It merely determined that such factor satisfied due process requirements under *IBT,* 266 F.3d at 50.

being bound to the strictures of the IBT Consent Decree, an action that would be outside the district court's discretion. *Id.* (distinguishing *Ass'n for Retarded Citizens of Connecticut, Inc. v. Thorne*, 30 F.3d 367 (2d Cir.1994)). Rather, they were enjoined from "acts that would frustrate the Consent Decree's operation on parties that are bound by the decree"—an act well within the district court's discretion under the All Writs Act. *Id.*

Further, the Court found that the injunction was "necessary and appropriate" to protect the operation of the portion of the Consent Decree which states that members and employees of the IBT are "hereby permanently enjoined from ... knowingly associating with any ... person otherwise enjoined from participating in union affairs." *Id.* at 50–51. The Court determined that Sombrotto and Gonzalez "had been effectively 'otherwise enjoined' from participating in IBT affairs" and thus it was necessary and appropriate to enjoin them "from contacting IBT members to solicit their membership in Local 116." *Id.* at 51. The Court did find the district court's injunction to be overbroad, however, in that it prevented the Respondents from soliciting new members for Local 116 who were not members of the IBT and interfered with the Respondent's ability to petition the NLRB. *Id.* The Court therefore vacated the portions of the injunction that did not pertain to the Respondents' "direct association with members or employees of the IBT or its local unions."

After remand, the Honorable Loretta A. Preska issued the following order:

NOW THEREFORE, IT IS HEREBY ORDERED AS FOLLOWS:

1. Sombrotto and Gonzalez are hereby permanently enjoined from knowingly associating with any current member or employee of the International Brotherhood of Teamsters or its affiliates.

2. Sombrotto, Gonzalez, Local 116, and any other labor organization controlled by Sombrotto or Gonzalez or in which either Sombrotto or Gonzalez serves as an officer, are hereby permanently enjoined from organizing, attempting to organize, or acting as collective bargaining representative for, any current member of the International Brotherhood of Teamsters.

3. Sombrotto, Gonzalez, Local 116, and any other labor organization controlled by Sombrotto or Gonzalez or in which either Sombrotto or Gonzalez serves as an officer, are hereby permanently enjoined from raiding any local union affiliated with the International Brotherhood of Teamsters to join Local 116 or any other labor organization controlled by Sombrotto or Gonzalez or in which Sombrotto or Gonzalez serves as an officer.

Order, November 19, 2001.

### A. *Minimum Contacts*

A federal court may enjoin any party under the All Writs Act who has "minimum contacts" with the jurisdiction under *International Shoe v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). *IBT*, 266 F.3d at 50. MTDC alleges that this Court has jurisdiction because "Sombrotto, Gonzalez and Local 116 are actively engaged in raiding and other hostile union activity in this jurisdiction." MTDC's Rep. Mem. at 16.

■ Local 116 represents Waste Management of New York and is active on Long Island, New York. It is undisputed that Local 116, *inter alia*, also engaged in the following contacts with New York: (1) solicited MTDC members at Filiberto Brothers in Brooklyn, New York in December 1999; (2) intervened in proceedings involving BFI of New York brought by the IBT seeking to represent all BFI

workers in June 1999; and (3) solicited support for Local 116 during the window periods at Chambers Paper Fibers in Brooklyn, New York. Sombrotto and Gonzalez are officers of Local 116, and often take part in these activities, and come into contact with MTDC members as a result. This is sufficient under *International Shoe* and its progeny to establish jurisdiction over the Respondents. As stated above, it is unnecessary that the Respondents have been party to the MTDC Consent Decree.

### B. *"Necessary and Appropriate"*

■ As with the injunction granted in *IBT*, this preliminary injunction is necessary and appropriate to enforce this Court's previous order enjoining all MTDC members from associating with anyone who is barred from participating in union affairs. It is undisputed that Gonzalez and Sombrotto are barred from participating in IBT affairs.

Respondents argue, however, that the Consent Decree should be read to enjoin MTDC members from associating only with those who have been banned from MTDC affairs, and that it is undisputed that Sombrotto and Gonzalez have not been so expelled.

Although it is true that in *IBT* the Respondents were enjoined from associating with members of the same union from which they had been banned, Paragraph 3 of the MTDC Consent Decree states that "[a]ll current and future officers, agents, representatives of the MTDC and of its constituent locals are permanently enjoined ... from knowingly associating ... with any person prohibited from participation in union affairs." Order, ¶ 3. The Consent Decree tellingly does not state that the MTDC members may not associate with any person prohibited from participation in MTDC affairs. Instead, Paragraph 3 underscores the Consent Decree's larger purpose of ensuring that MTDC affairs are run "democratically, with integrity, solely for the benefit of its members, and without unlawful outside influence."

It does not matter whether persons are prohibited from participating in MTDC affairs or those of other unions; their influence on MTDC nonetheless undermines the Consent Decree. A person who has been prohibited from taking part in any union affairs may bring to MTDC the sort of nefarious and undemocratic activity that the Consent Decree seeks to preclude.

The Respondents have cited comments by IBT's counsel before the Honorable David N. Edelstein in *United States v. IBT*. At a hearing on February 1, 2000, Larry Cary, IBT's counsel, stated that if the injunction that the IBT requested against Sombrotto, Gonzalez, and Local 116 were granted, "[t]hat would leave them free, if they wanted to raid, if they wanted to organize unorganized workers, [or] workers that are represented by AFL–CIO unions other than the Teamsters, they're free to do it." Hearing transcript, at 17. Further, Cary stated that the respondents "are free to organize anybody else. The Consent Decree does not affect anybody else's relationship." *Id.*

It is true that the Second Circuit held that the district court could not, pursuant to its power to enforce the IBT Consent Decree, affect the Respondents' ability to associate with or organize any persons except members of the IBT. However, at issue here is a different Consent Decree, albeit one modeled on that in the *IBT* case. Therefore, this court cannot, pursuant to its power to enforce the MTDC Consent Decree, curtail Respondents' ability to associate with or organize any persons except those subject to the decree, the members of the MTDC and its locals. To paraphrase Mr. Cary's statement above, such ruling leaves the Respondents free to organize any workers that are not represented by either the Teamsters, pursuant

to the earlier order that was upheld in part in *IBT*, or the MTDC, pursuant to this order. Such ruling does not impinge on Respondents' First Amendment rights because it only pertains to the Respondents' "direct association with members or employees of the [MTDC] or its local unions." *IBT*, 266 F.3d at 51.

The following order is explicitly modeled on the one promulgated by Judge Preska in the *IBT* case after remand and is limited to prohibiting Respondents' contact with MTDC members:

1. Sombrotto and Gonzalez are hereby preliminarily enjoined from knowingly associating with any current member or employee of the MTDC or its affiliates.

2. Sombrotto, Gonzalez, Local 116, and any other labor organization controlled by Sombrotto or Gonzalez or in which either Sombrotto or Gonzalez serves as an officer, are hereby preliminarily enjoined from organizing, attempting to organize, or acting as collective bargaining representative for, any current member of the MTDC.

3. Sombrotto, Gonzalez, Local 116, and any other labor organization controlled by Sombrotto or Gonzalez or in which either Sombrotto or Gonzalez serves as an officer, are hereby preliminarily enjoined from raiding any local union affiliated with the MTDC to join Local 116 or any other labor organization controlled by Sombrotto or Gonzalez or in which Sombrotto or Gonzalez serves as an officer.

A trial will be held to determine whether a permanent injunction should ensue. All discovery must be completed by September 1, 2002, and a pretrial order must be submitted by September 15, 2002.

It is so ordered.