12-3079-cv
United States v. Manne

## UNITED STATES COURT OF APPEALS
### FOR THE SECOND CIRCUIT
_____

August Term, 2012

(Argued: May 31, 2013      Decided: August 27, 2013)

Docket No. 12-3079-cv
_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*-v.-*

STEVEN A. SCHURKMAN, IN HIS CAPACITY AS TRUSTEE OF THE JACOB MANNE
IRREVOCABLE TRUST, JOHN DOE, IN HIS CAPACITY AS THE REPRESENTATIVE OF THE
ESTATE OF JACOB MANNE, GUARDIAN JOSEPH S. MANNE,

*Defendants*,

JOSEPH S. MANNE,

*Defendant-Appellant.*[*]
_____

Before:

  HALL and LYNCH, *Circuit Judges*, and ENGELMAYER, *District Judge.*[†]

_____

  Defendant-appellant Joseph S. Manne appeals from an order of the District Court

for the Southern District of New York (Karas, *J.*) enjoining him and other defendants,

---

[*] The Clerk of Court is respectfully directed to amend the caption to conform to the above.
[†] The Honorable Paul A. Engelmayer of the United States District Court for the Southern District of New York, sitting by designation.

1

pursuant to the Anti-Injunction Act, 28 U.S.C. § 2283, from litigating in any court other than the Southern District of New York issues related to a consent decree that resolved an environmental enforcement action brought against him by the government under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 and the Fair Debt Collection Practices Act of 1990. We hold that under the circumstances the statutory exception to the Anti-Injunction Act which permits a federal court to enjoin state proceedings "where necessary in aid of its jurisdiction" does not apply. We therefore conclude that the Anti-Injunction Act's general prohibition against a federal injunction of state proceedings precludes the district court from enjoining appellant's state suit.

VACATED.

––––––––––––––––––––––––

LAWRENCE H. FOGELMAN (Sarah S. Normand, *on the brief*), Assistant United States Attorneys, Of Counsel, *for* Preet Bharara, United States Attorney for the Southern District of New York, New York, NY, *for Plaintiff-Appellee*.

AMBROSE RICHARDSON, A.M. Richardson, P.C., New York, NY, *for Defendant-Appellant*.

––––––––––––––––––––––––

HALL, *Circuit Judge*:

This appeal presents the issue of whether a district court, under the All Writs Act, 28 U.S.C. § 1651(a), and the Anti-Injunction Act, 22 U.S.C. § 2283, has the authority to enjoin a party from litigating in state court issues arising out of a consent decree which settled a civil action brought against the party in federal court by the United States.

2

Appellant Joseph S. Manne settled an environmental enforcement action brought against him by the United States through a consent decree providing, *inter alia*, that Manne would pay the government an amount equal to the fair market value of a parcel of real property owned by Manne. Under the decree, an independent appraiser was engaged to determine the property's fair market value. After the appraiser issued a report, Manne unsuccessfully challenged the appraised value in federal court. Manne then filed an action in New York Supreme Court, asserting claims against the appraiser for, among others, fraud and negligent misrepresentation. On application by the government, the district court enjoined the state court proceedings. We hold that the Anti-Injunction Act, which permits a federal court to enjoin a state proceeding in certain limited circumstances, including where an injunction is "necessary in aid of [the federal court's] jurisdiction," does not permit the district court in this case to enjoin Manne's state court suit. Accordingly, we vacate the injunction of the district court.

**BACKGROUND**

In October 2000, after receiving reports of contaminated wells in East Fishkill, Dutchess County, New York, the Environmental Protection Agency ("EPA") and the New York State Department of Environmental Conservation identified as the primary source of the contamination a septic tank at a site in East Fishkill owned by Jacob Manne, appellant Joseph S. Manne's father.[1] EPA later discovered a buried acid waste pit on the site that contained lead, perchloroethene, and other hazardous substances.

---

[1] For ease of reference, "Manne" as used in this opinion will refer to appellant Joseph S. Manne.

3

In February 2001, after incurring significant costs in cleaning up and removing contaminated soil from the site, EPA forwarded a Notice of Potential Liability and Request for Information informing Jacob Manne that EPA considered him a potentially liable party for the response costs incurred in the cleanup. Following Jacob Manne's death, the United States brought an action against appellant Joseph S. Manne, in his capacity as trustee of the Jacob Manne Irrevocable Trust (the "Trust"), a trust created and funded by Jacob Manne, and against Steven A. Schurkman, in his capacity as representative for the Estate of Jacob Manne. The United States alleged that shortly after receiving the notice, Jacob Manne had created the Trust, appointed Schurkman as Trustee, and fraudulently transferred cash and real property into the Trust. These assets were subsequently transferred to Joseph S. Manne, the Trust's principal beneficiary.

The United States sought reimbursement of approximately $1.5 million in response costs incurred under sections 104 and 107 of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. §§ 9604 and 9607, for cleanup activities undertaken at the site. According to the Amended Complaint, the site was used during the 1960s and 1970s by J. Manne, Inc., a company owned by Jacob Manne that was engaged in the cleaning and repairing of computer chip racks. J. Manne, Inc.'s work generated toxic waste materials, including tetrachloroethene, trichloroethene, lead, nitric acid, and sulfuric acid, all of which were stored at the site. The United States also sought to void as fraudulent conveyances the transfers of cash and real property from Jacob Manne to the Trust and to compel the return of those assets to Jacob Manne's Estate to satisfy the Estate's liabilities to the United States.

4

In 2010, the parties reached a settlement, embodied in a Consent Decree which the district court approved in July 2010. Under the terms of the Consent Decree, Manne[2] agreed to pay the United States an amount equal to the appraised value of certain property which had been transferred by Jacob Manne into the Trust (the "Property").[3] The appraised value of the Property was to be determined by an appraiser selected by the parties. Pursuant to the Consent Decree, the United States would provide a list of at least three appraisers, from which defendants would choose one. The United States would then retain the appraiser to prepare an appraisal report of the Property within six months of the date the appraiser was selected. The parties agreed that "[t]he Appraised Value of the Property as determined by the Selected Appraiser shall be unreviewable by any Party to this Consent Decree or by the Court." Consent Decree ¶ 8.

In exchange for payment of the Property's appraised value, the United States provided defendants with a covenant not to sue or to take administrative action against Manne and ND-4 pursuant to 42 U.S.C. § 9607(a), regarding the contaminated site. Defendants also received protection from contribution actions arising out of the contamination. *See* 42 U.S.C. § 9613(f)(2). Schurkman, Manne, and ND-4, in turn, covenanted not to sue "the United States, or its contractors or employees, with respect to the [contaminated site] or this Consent Decree." Consent Decree ¶ 28.

---

[2] Although Manne was named in the action only in his capacity as the representative of the Estate of Jacob Manne, he executed the Consent Decree both in that capacity and in his personal capacity. *See* Consent Decree at 4, ¶ 3(p); 20-21.

[3] Pursuant to the Consent Decree, Schurkman transferred title to the Property from the Trust to ND-4 LLC, an entity owned by Manne that was the owner and manager of Trust assets, and Schurkman was subsequently dismissed from the action with prejudice.

The parties expressly contemplated the approval and enforcement of the Consent Decree by the district court:

> The United States and Settling Defendants agree, and this Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith, that settlement of this matter will avoid prolonged and complicated litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

*Id.* ¶ I(C). The Consent Decree provided that "[t]his Court shall retain jurisdiction over this matter for the purpose of interpreting and enforcing the terms of this Consent Decree," *id.* ¶ 39, and that Manne and ND-4 "shall not challenge the terms of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree," *id.* ¶ 1. Following a period of public notice and comment on the Consent Decree, during which no public comments were received, the district court approved and entered the Consent Decree.

In August 2010, the United States provided the names of three appraisers to defendants, who selected DeWan & Schott Appraisal Associates, LLC ("DeWan & Schott"). Following a visit to the Property, during which representatives from DeWan & Schott were accompanied by attorneys for Manne and the United States, the appraiser submitted an Appraisal Report. The Report noted that the appraiser took various steps in developing a valuation opinion of the Property, including researching the regional market for industrial real estate, specifically market information relating to recent sales and listings of industrial properties with similar characteristics located around the I-84 and I-87 corridors; interviewing real estate brokers with experience in the regional market;

studying information relating to nearby groundwater contamination to understand its potential impact on the Property's fair market value; and employing various methods of property valuation. The appraisers concluded that the appraised value of the Property as a whole as of October 5, 2010, the date of the inspection, was $1,290,000.

The appraisers certified that the statements of fact in the Report were true and correct, that the appraisers were unbiased with respect to the Property and the parties involved, and that compensation for preparation of the Report was not contingent upon reaching a predetermined result. The appraisers represented that the Report was prepared in accordance with the Uniform Standards of Professional Appraisal Practice ("USPAP"), the Code of Professional Ethics, and the Standards of Professional Appraisal Practice of the Appraisal Institute. On January 13, 2011, in accordance with the terms of the Consent Decree, the district court entered judgment against Joseph S. Manne, in his capacity as the representative of the Estate of Jacob Manne, and ND-4, in the amount of $1,290,000 plus interest.

In July 2011, despite the Consent Decree's provision that the Property's appraised value shall be unreviewable, Manne filed a motion seeking to modify or vacate the judgment pursuant to Federal Rule of Civil Procedure 60(b), based on objections to the Appraisal Report. Manne sought a new appraisal, arguing that the DeWan & Schott appraisal was deficient in that the appraiser failed to state and justify certain "extraordinary assumptions" made in the Report, including its use of sales of comparable parcels in Orange County as a proxy for sales in Dutchess County, where the Property is located, and the Report's determination that development of the Property would not be

7

subject to substantial permitting requirements.  Manne also argued that the appraiser

failed to factor certain "unique" features into the appraised value, including anticipated

opposition to development by citizen environmental groups; construction obstacles posed

by a water course running through the property; and regulatory complications caused by

the Property's proximity to the Taconic Parkway, the Appalachian Trail, and the presence

of rare plant and animal species.  In support of his request for relief, Manne submitted

two expert reports—one, by a law firm, opined that any attempt to develop the Property

would be hindered by substantial regulatory hurdles and the other, by an appraiser,

concluded that the Appraisal Report completed by DeWan & Schott failed to conform to

USPAP standards.

The district court denied the motion on the basis that the Consent Decree explicitly

provided that the appraised value shall be "unreviewable."  The court noted that the

Consent Decree had been negotiated at arms' length and that there was no allegation that

the appraisal was procured by fraud.  Rather, Manne's objections to the Appraisal Report

were, at bottom, criticisms of the appraisal methods employed by DeWan & Schott.  This

court affirmed the denial of Manne's motion.  *See United States v. Manne*, 510 Fed.

App'x 83 (2d Cir. 2013).

After Manne appealed the district court's denial of his Rule 60(b) motion but

before this court affirmed that order, Manne and ND-4 brought an action in New York

Supreme Court against DeWan & Schott and two members of that firm asserting claims

for negligent misrepresentation, gross negligence, and fraud arising out of the preparation

of the Appraisal Report.  The complaint's allegations of deficiencies in the Report were

8

similar to, and indeed, nearly identical to those made in support of Manne's Rule 60(b) motion in federal district court. Manne and ND-4 sought damages of at least $650,000—the difference between the appraised amount as determined by DeWan & Schott and the amount proffered by Manne as a reasonable appraisal value. The complaint made no mention of the district court's denial of Manne's Rule 60(b) motion or of the appeal then pending before this court.

By letter dated May 23, 2012, the United States notified the district court of the filing of the state court action. The United States requested that the district court exercise its jurisdiction over the enforcement of the Consent Decree and enjoin the state court proceeding pursuant to its authority under the All Writs Act, 28 U.S.C. § 1651(a). The United States argued that such an injunction was not precluded by the Anti-Injunction Act, 28 U.S.C. § 2283, which provides that a federal court may not enjoin proceedings in a state court except "[1] as expressly authorized by Act of Congress, or [2] where necessary in aid of its jurisdiction, or [3] to protect or effectuate its judgments." The United States argued that a district court injunction of the state court proceeding was not barred for two reasons. Pursuant to the Consent Decree's provision that the district court retained "jurisdiction over th[e] matter for the purpose of interpreting and enforcing the terms of this Consent Decree," the district court could enjoin Manne and ND-4's state court action from proceeding on the grounds that doing so is (1) "necessary in aid of [the district court's] jurisdiction" and (2) "to protect or effectuate [the district court's] judgment[]."

9

The district court rejected the government's argument that the issuance of an injunction was permitted under the so-called "relitigation" exception to the Anti-Injunction Act, which permits a federal court to enjoin state proceedings where necessary "to protect or effectuate its judgments." 28 U.S.C. § 2283. Citing *Smith v. Bayer Corp.*, 131 S. Ct. 2368 (2011), the district court held that the relitigation exception did not apply because the specific allegations made by Manne in the state court complaint—that the appraisers negligently or fraudulently prepared the appraisal—had not been raised in the Rule 60(b) proceedings in federal court. The government has expressly declined to challenge this aspect of the district court's ruling on appeal. *See* Appellee Br. 27 n.8.

However, finding that the "State Court action in my view clearly interferes with this Court's exclusive jurisdiction over the Consent Decree," the district court held that an injunction was permitted under the "in aid of jurisdiction" exception. The court noted that the Consent Decree granted to the district court jurisdiction over the interpretation and enforcement of the Consent Decree. The court opined that Manne, "after striking out in this court," brought the state court suit asserting claims of fraud and negligent misrepresentation against the appraiser, thus seeking review of the adequacy of the appraiser's methods. Such a review, the court noted, is clearly disallowed by the Consent Decree's provision that the appraisal shall be "unreviewable." The court continued:

> And whether one dresses it up as mistake or as negligence or
> as gross negligence or even fraud, it's the same, which is, it's
> asking a State Court to do what this Court should be doing,
> which is interpreting and applying and enforcing the Consent
> Decree, which includes issues having to do with the appraisal,
> and, of course, the Court will apply the Consent Decree that

the parties negotiated with counsel and the Court so ordered
back nearly two years ago.

Special App'x 32. In the district court's view, any judgment issued in the state court suit

that awarded money to Manne "would in effect challenge or redo the appraisal" and

"would frustrate the Consent Decree and would be inconsistent with [the] Court's

exclusive jurisdiction over the enforcement of the Consent Decree." *Id.* at 34. The

district court thus granted the government's request for an injunction and issued an order

"enjoin[ing] Defendants from litigating issues related to the Consent Decree in any court

other than the Southern District of New York." Special App'x 2. This appeal followed.

### DISCUSSION

The sole issue on appeal is whether the district court's injunction against the state

court action was proper under the All Writs Act, 28 U.S.C. § 1651, and the Anti-

Injunction Act, 28 U.S.C. § 2283. The All Writs Act grants federal courts authority to

"issue all writs necessary or appropriate in aid of their respective jurisdictions and

agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). This statute must be

read in tandem with the Anti-Injunction Act, which tempers the potency of the All Writs

Act by limiting the circumstances under which a federal court may enjoin state court

proceedings. The Anti-Injunction Act, enacted in its original form as part of the Judiciary

Act of 1793, provides, as noted above, that a federal court "may not grant an injunction to

stay proceedings in a State court except [1] as expressly authorized by Act of Congress,

or [2] *where necessary in aid of its jurisdiction*, or [3] to protect or effectuate its

judgments." 28 U.S.C. § 2283 (emphasis added). We review the district court's issuance

11

of an injunction under the All Writs Act for abuse of discretion. *United States v. Int'l Bhd. of Teamsters*, 266 F.3d 45, 49 (2d Cir. 2001). We review *de novo* the court's interpretation of consent decrees, and of the All Writs Act and the Anti-Injunction Act. *Id.*

Given "the explicit wording" of the Anti-Injunction Act and "the fundamental principle of a dual system of courts," "[a]ny doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy." *Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 297 (1970). Since the Anti-Injunction Act's prohibitory provision "rests on the fundamental constitutional independence of the States and their courts, the exceptions should not be enlarged by loose statutory construction." *Id.* at 287. "Proceedings in state courts[, thus,] should normally be allowed to continue unimpaired by intervention of the lower federal courts, with relief from error, if any, through the state appellate courts and ultimately [the Supreme] Court." *Id.*

In this case, the district court having held that an injunction was permitted under the "in aid of jurisdiction" exception to the Anti-Injunction Act, and the United States having expressly declined to challenge the court's ruling with respect to the relitigation exception, our review is limited solely to the applicability of the "in aid of jurisdiction" exception.

Historically, the "in aid of jurisdiction" exception was seen as expressing the "well settled rule that if an action is *in rem* the court first obtaining jurisdiction over the *res*

12

could enjoin suits in other courts involving the same *res*." Wright & Miller, Federal Practice & Procedure § 4225 (3d ed.) (italics added); *see also Toucey v. New York Life Ins. Co.*, 314 U.S. 118, 134-35 (1941). In *Toucey*, the Supreme Court considered a prior version of the statute, which contained a general prohibition against federal injunctions of state proceedings tempered only by a limited exception permitting a federal court to enjoin state proceedings that interfere with its administration of a bankruptcy proceeding. Justice Frankfurter, writing for the Court, rejected the idea that there existed a number of nonstatutory exceptions to the statute's prohibitory provision. The sole nonstatutory exception to the statute's general prohibition, the Court noted, was to permit a federal court to protect its *in rem* jurisdiction by enjoining a parallel *in rem* state proceeding. *Id.* at 139. That rule, the Court recognized, was by then "well settled." *Id.* at 135.

Congress amended the statute in 1948 to its present form by expressly incorporating three exceptions to the statute's prohibition against federal injunctions of state proceedings: where such an injunction is (1) expressly authorized by Act of Congress, (2) necessary in aid of the federal court's jurisdiction, or (3) to protect or effectuate the federal court's judgments. 28 U.S.C. § 2283. The Supreme Court explained the historical limitations of the exception in *Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623 (1977). In that case, Vendo Co. sued a former employee in state court for violation of a noncompetition clause in his employment contract. The employee then sued Vendo Co. in federal court asserting that the noncompetition clause violated federal antitrust laws. Following the institution of the federal antitrust suit, Vendo Co. won a $7 million judgment in state court. The federal court, invoking the "in aid of jurisdiction"

13

exception (and other grounds), issued an order prohibiting Vendo Co. from collecting on the judgment.

The Supreme Court reversed, finding that the "in aid of jurisdiction" exception did not apply because the federal and state actions were each *in personam*. *Id.* at 641. The Court noted:

> The traditional notion is that *in personam* actions in federal and state court may proceed concurrently, without interference from either court, and there is no evidence that the exception to § 2283 was intended to alter this balance. We have never viewed parallel *in personam* actions as interfering with the jurisdiction of either court; as we stated in *Kline v. Burke Construction Co.*, 260 U.S. 226, 230 (1922):
>
>> "[A]n action brought to enforce [a personal liability] does not tend to impair or defeat the jurisdiction of the court in which a prior action for the same cause is pending. Each court is free to proceed in its own way and in its own time, without reference to the proceedings in the other court. Whenever a judgment is rendered in one of the courts and pleaded in the other, the effect of that judgment is to be determined by the application of the principles of *res adjudicata . . . .*"

*Vendo Co.*, 433 U.S. at 641 (alterations in original). The Court observed that the "in aid of jurisdiction" exception thus "may be fairly read as incorporating th[e] historical *in rem* exception." *Id.* (citing Wright, Law of Federal Courts, 204 (3d ed. 1976)).

We recently reaffirmed the principle that the "in aid of jurisdiction" exception generally applies only where necessary to protect a federal court's jurisdiction over a *res*. *See Wyly v. Weiss*, 697 F.3d 131, 137-38 (2d Cir. 2012). In *Wyly*, we held that a district court could not invoke the "in aid of jurisdiction" exception to enjoin state proceedings, notwithstanding that a settlement agreement resolving the federal action provided that the

14

federal district court would retain exclusive jurisdiction over enforcement of the settlement. *Id.* at 139. *Wyly* involved a class action, certified by the district court, in which the class asserted violations of securities laws against a defendant corporation. Following appointment of class counsel, the parties reached a settlement agreement, pursuant to which class counsel would receive as attorneys' fees shares of common stock in the defendant corporation valued at $30 million to $40 million. *Id.* at 134-35. After holding a fairness hearing, at which no class member objected to the proposed settlement, this court approved the settlement and issued a judgment providing that both the settlement amount and the class counsel fee provision were fair and reasonable. The judgment also provided that the district court would retain exclusive jurisdiction "over the parties and the Settlement Class Members for all matters relating to th[ese] Actions." *Id.* at 135 (alteration in original).

Months after the settlement was approved, after revelation that certain material had been improperly withheld by the defendant corporation during discovery, class members requested that class counsel move to vacate the judgment that approved the settlement pursuant to Federal Rule of Civil Procedure 60(b), but class counsel declined to do so. The class members, acting on their own, then filed a Rule 60(b) motion, which was denied by the district court. Undeterred, the class members filed a complaint in New York Supreme Court against class counsel, asserting claims for, among others, legal malpractice, breach of fiduciary duty, and fraud. The federal district court, relying in part on the "in aid of jurisdiction" exception, enjoined the class members from prosecuting the state court action. *Id.* at 137.

15

On appeal, this court held that the "in aid of jurisdiction" exception did not authorize the federal court to enjoin the state malpractice suit. We reiterated that the exception "is generally reserved for state court actions *in rem*, because the state court's exercise of jurisdiction 'necessarily impairs, and may, defeat,' the federal court's jurisdiction over the *res*." *Id.* at 137-38 (quoting *Kline v. Burke Constr. Co.*, 260 U.S. 226, 229 (1922)). Because "an *in personam* action involves a controversy over liability rather than over possession of a thing[,] . . . an *in personam* action generally does not tend to impair or defeat the jurisdiction of the court in which a prior action for the same cause is pending." *Id.* at 138 (internal quotation marks omitted).

We have recognized a limited exception to the general rule that the "in aid of jurisdiction" exception does not permit a federal court to enjoin a parallel *in personam* action. *See In re Baldwin-United Corp.*, 770 F.2d 328, 337 (2d Cir. 1985). In *Baldwin-United*, we held that injunction of an *in personam* action was justified where "the district court had before it a class action proceeding so far advanced that it was the virtual equivalent of a *res* over which the district judge required full control." *Id.* at 337. In crafting that exception, however, we relied on the exceptional circumstances of that case—the case's extraordinary complexity and multidistrict nature, the fact that 18 of the 26 defendants had already settled, and the fact that there was a "substantially significant prospect that [the remaining] 8 defendants [would] settle in the reasonably near future." *Id.* at 338. We noted that other courts, employing similar reasoning, have invoked the "in aid of jurisdiction" exception to enjoin state proceedings which threatened to interfere with ongoing federal school desegregation litigation. *Id.*; *see also Swann v. Charlotte-*

16

*Mecklenburg Bd. of Educ.*, 501 F.2d 383, 384 (4th Cir. 1974). Noting that "the jurisdiction of a multidistrict court is analogous to that of a court in an *in rem* action or in a school desegregation case, where it is intolerable to have conflicting orders from different courts," we departed from the general rule that the "in aid of jurisdiction" exception may be invoked only to protect a federal court's jurisdiction over a *res*. *Baldwin-United*, 770 F.2d at 337 (internal quotation marks omitted).

The circumstances in *Baldwin-United*—litigation consisting of consolidated multidistrict class actions which, following two years of settlement negotiations brokered by the district court, was in the final stages of settlement at the time the state court suit is filed—are absent from this case, *see Wyly*, 697 F.3d at 138; *Baldwin-United*, 770 F.2d at 338, and this single-district, non-class action is easily distinguished from that one. Moreover, we recognized in *Baldwin-United* that, were the circumstances such that the remaining eight defendants were no longer likely to settle, "the situation would fall within the *Burke v. Kline Construction Co.* rule that *in personam* proceedings in state court cannot be enjoined merely because they are duplicative of actions being heard in federal court." *Id.* Because circumstances similar to those in *Baldwin-United* are absent here, we are bound to apply the general rule that an *in personam* state court action may not be enjoined merely because it is duplicative of, or conflicts with, a prior federal judgment. In accord with the principle that exceptions to the Anti-Injunction Act "should not be enlarged by loose statutory construction," *Atl. Coast Line R.R. Co.*, 398 U.S. at

17

287, we decline to extend the holding of *Baldwin-United* beyond the exceptional circumstances of that case.[4]

The United States maintains that this case falls within the limited exception described in *Baldwin-United* because, were Manne to prevail on his fraud and negligence claims and obtain a judgment against the appraisers in state court, that judgment would impermissibly conflict with the district court's denial of Manne's Rule 60(b) motion. The district court agreed, holding that any judgment that awarded money damages to Manne in the state court suit "would in effect challenge or redo the appraisal" and "would frustrate the Consent Decree and . . . be inconsistent with [the] Court's exclusive jurisdiction over the enforcement of the Consent Decree." Special App'x 34. The possibility that a potential judgment in a subsequent state court suit might conflict with a prior federal judgment, however, is not a basis to enjoin the state court suit. As this Court has recently recognized, "a court does not usually get to dictate to other courts the preclusion consequences of its own judgment." *Wyly*, 697 F.3d at 140 (quoting *Smith v. Bayer Corp.*, 131 S. Ct. 2368, 2375 (2011)). "Deciding whether and how prior litigation has preclusive effect is usually the bailiwick of the *second* court"—here, the New York state court. *Id.*

We have no reason to believe that any judgment Manne obtains in state court would not peaceably coexist with the district court's judgment approving the Consent

[4] Notably, the injunction in *Baldwin-United* was to expire upon entry of final judgment in all of the multidistrict proceedings in federal court, thus posing less of a risk to "fundamental constitutional independence of the States and their courts." *Atl. Coast Line R.R. Co.*, 398 U.S. at 207; *see also Baldwin-United*, 770 F.2d at 334. By contrast, the injunction in this case, if permitted to stand, would be permanent in nature, and would seriously undercut principles of comity.

Decree. The Consent Decree and the judgment approving it are, together, an explication of the rights and obligations of Manne and ND-4 vis-à-vis the United States; the appraiser is not a party to the Consent Decree.[5] Any money judgment that Manne might win in state court against the appraiser, therefore, can have no effect on the appraisal value already determined according to the terms of the Consent Decree. Manne's obligation to remit to the United States the full amount of that appraisal value as dictated by the Consent Decree and confirmed by this court persists unaffected.

## CONCLUSION

The district court erred by relying on the "in aid of jurisdiction" exception to the Anti-Injunction Act in enjoining Manne's state court suit. The injunction is VACATED.

---

[5] We express no opinion as to any rights the appraiser may have under the Consent Decree vis-à-vis Manne, nor do we express any opinion as to the merits of Manne's state court proceedings generally.